**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**CASE NO.:**

SANDY OESTRIECHER and KURT
OESTRIECHER, her husband,

      Plaintiffs,

vs.

THE GOODYEAR TIRE AND RUBBER
COMPANY, a foreign corporation; and
SUMITOMO RUBBER USA, LLC., a foreign
limited liability company formerly known as
GOODYEAR DUNLOP TIRES NORTH
AMERICA, LTD., a foreign corporation;

      Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

      COME NOW the Plaintiffs, SANDY OESTRIECHER and KURT OESTRIECHER, her

husband, by and through their undersigned attorneys, and file this Complaint and Demand for Jury

Trial to sue Defendants, THE GOODYEAR TIRE & RUBBER COMPANY, a foreign

corporation; and SUMITOMO RUBBER USA, LLC., a foreign limited liability company formerly

known as GOODYEAR DUNLOP TIRES NORTH AMERICA, LTD., a foreign corporation,

(both Defendants hereinafter collectively referred to as "Goodyear" or "Defendants"), and allege:

## INTRODUCTION

1.      Sandy Oestriecher and Kurt Oestriecher bring this products liability action to recover damages for the personal injuries Sandy Oestriecher suffered in Florida when the tread separated from the original equipment Goodyear G670 RV tire on their recreational vehicle causing a catastrophic failure of the tire at issue and a catastrophic crash of the RV. Sandy Oestriecher suffered catastrophic injuries that has left her with permanent scarring, deformity, and other significant consequences. The defective tire was designed, manufactured, distributed, and placed into the stream of commerce by Goodyear.

## THE PARTIES

2.      Plaintiff, Sandy Oestriecher, is domiciled in Alexandria, Louisiana. Plaintiff Sandy Oestriecher is therefore a citizen of Louisiana for the purposes of 28 U.S.C. § 1332.

3.      Plaintiff, Kurt Oestriecher, is domiciled in Alexandria, Louisiana. Plaintiff Kurt Oestriecher is therefore a citizen of Louisiana for the purposes of 28 U.S.C. § 1332.

4.      Defendant, The Goodyear Tire & Rubber Company, is a corporation incorporated in the state of Ohio with its principal place of business in Ohio. The Goodyear Tire & Rubber Company is therefore a citizen of Ohio for the purposes of 28 U.S.C. § 1332. Further, the Goodyear Tire & Rubber Company is a foreign corporation doing business throughout the State of Florida, for which it receives substantial revenue, having its principal place of business located at 200 Innovation Way, Dept. 616, Akron, Ohio 44316. The Goodyear Tire & Rubber Company has registered with the Florida Department of State and has appointed a registered agent for service of process in Florida, to wit: Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301-2525.

5.      Defendant, Sumitomo Rubber USA, LLC, was and is a foreign limited liability company doing business in the State of Florida. Sumitomo Rubber USA, LLC's sole member is

2

SRI America, Inc., a corporation incorporated in the State of Delaware with its principal place of business in California. Defendant Sumitomo Rubber USA, LLC, is therefore a citizen of both Delaware and California for the purposes of 28 U.S.C. § 1332.

6.      Both of the Defendants, separately and together, cooperated to design, manufacture, construct, distribute, market, promote, and otherwise place the subject tire into the stream of commerce, onto the recreational vehicle driven by Kurt Oestriecher during the subject crash, to be described further below.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the Plaintiffs' claims based on diversity of citizenship under 28 U.S.C. § 1332(a)(1).  Complete diversity exists because each plaintiff is a citizen of a different state than each defendant.  Further, the amount in controversy exceeds $75,000, as this action seeks damages arising from severe internal and orthopedic injuries suffered by Plaintiff Sandy Oestriecher.

8.      This Court further has specific jurisdiction over the Plaintiffs' claims through the application of Florida's long arm jurisdiction statute, Florida Stat. Ann. 48.193, because Defendants caused injury to the Plaintiffs within the state of Florida at a time when Defendants were engaged in solicitation or service activities within the state of Florida and products serviced and manufactured by the Defendants were used and consumed within the state of Florida in the ordinary course of commerce, trade, and use.

9.      The Oestriechers initially filed suit in the Middle District of Florida on July 3, 2019 with case number 3:19-cv-00798-J-39PDB.

10.     At the time of filing the original suit, the parties' citizenship was as stated in paragraphs 2 through 5 of this Complaint, but the original and amended suit omitted some of these

allegations.  As a result, the District Court dismissed the case without prejudice to refiling a new case with sufficient allegations.

11.     The Court's dismissal without prejudice was affirmed on appeal in an opinion that, under Rule 41 of the Federal Rules of Appellate Procedure, became final on April 20, 2020 when mandate issued.

12.     Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

13.     In addition to the above, Defendants submitted themselves to personal jurisdiction in this Court by at all times material purposely availing themselves by doing personally, or through their agents, the following acts creating systematic and continuous contacts and affiliations such that Defendants are at home in the state of Florida:

    (a)     Because Defendants directly target marketing to, and franchise within, Florida, and set prices in the Florida market in conjunction with contracts between Defendants and Florida businesses;

    (b)     Because the Plaintiffs' causes of action arise from Defendants activities related to the manufacture and research and development and design implementation and testing and in-field monitoring and warranting and warning dissemination in relation to tires such as the G670 RV tire, size 295/80 R 22.5, load range H, which failed in a catastrophic manner in Florida;

    (c)     Because Defendants participated in the design and manufacture of the defectively designed and manufactured tire which failed in a catastrophic manner in Florida that resulted in the damages suffered by the Plaintiffs as set forth below;

    (d)     Because the Plaintiffs' causes of action arise from Defendants' activities related to the design of tires made with patented technology invented by the employees of Defendants', and such tires include the G670 RV tire, size 295/80 R 22.5, load range H, which was purchased as part of a recreational vehicle by Kurt Oestriecher and/or Sandy Oestriecher and which failed in a catastrophic manner in Florida, as well as countless tires directed into the Florida market;

    (e)     Because the Plaintiffs' causes of action in this case are based, in part, on the

fact that Defendants placed the tire at issue, which Defendants designed, into the stream of commerce with the expectation that it would be used by consumers in the forum state;

(f)     Because Defendants are aware that the stream of commerce will sweep their tires into Florida;

(g)     Because, beyond placing the Defendants' tire at issue into the stream of commerce, Defendants have also engaged in additional conduct that indicates an intent to serve the market in Florida;

(h)     Because Defendants additional conduct indicates an intent to serve the market in Florida during the period from November of 2001 through July of 2018 including advertising in Florida through national advertising that has intentionally pervaded into Florida, and through specific marketing efforts particularly targeted at Florida, including advertising focused on events in Florida;

(i)     Because, during the period from November 2001 through July of 2018, Defendants spent millions of dollars marketing Defendants' tires in Florida, including both Florida-specific promotions and national marketing that pervades into Florida;

(j)     Because, during the period from November 2001 through July of 2018, Defendants have routinely performed in-field service and monitoring of tires (including performing warranting, recalling, and technical service) in Florida;

(k)     Because, during the period from November 2001 through July of 2018, Defendants trained personnel at Defendants' tire dealerships in Florida in tire workmanship and materials standards applicable to the tires they manufactured;

(l)     Because, during the period from November 2001 through July of 2018, Defendants gathered data about their tire lines' performance in Florida and used that data in the redesign of its products;

(m)     Because Defendants have held patents and trademarks which they demand must be honored and enforced in Florida;

(n)     Because of Defendants' additional conduct indicating an intent to serve the market in Florida which includes establishing channels for providing regular advice to customers in Florida;

(o)     Because Defendants have employed Florida residents, and Defendants have recruited Florida residents for employment in Florida and beyond Florida;

(p)     Because Defendants have had Area Sales Managers assigned to areas including Florida at some time between November 2001 through July of 2018;

(q)     Because Defendants have had multiple Area Sales Managers assigned to multiple areas that have included different locations within Florida at some time between November 2001 through July of 2018;

(r)     Because Defendants have had Regional Sales Managers assigned to regions including Florida at some time between November 2001 through July of 2018;

(s)     Because Defendants have had multiple Regional Sales Managers assigned to multiple regions that have included different locations within Florida at some time between November of 2001 through July of 2018;

(t)     Because Defendants have had Strategic Accounts Managers assigned to accounts in Florida at some time between November of 2001 through July of 2018;

(u)     Because Defendants' have had Sales Analysts whose responsibilities included analyzing sales in Florida;

(v)     Because Defendants have had Retail Sales Representatives whose territories included Florida;

(w)     Because Defendants have contracted with hundreds of individuals residing in Florida and businesses in Florida pursuant to contracts to be performed, at least in part, in Florida;

(x)     Because Defendants' additional conduct indicating an intent to serve the market in Florida includes marketing tires in Florida through a network of Florida distributors who serve as Defendants' sales agents in Florida;

(y)     Because Defendants have had accounts with tire distributors in Florida at some time between November of 2001 through July of 2018;

(z)     Because Defendants have had accounts with tire dealerships in Florida at some time between November of 2001 through July of 2018;

(aa)    Because Defendants have had accounts with tire wholesalers in Florida at some time between November of 2001 through July of 2018;

(bb)    Because Defendants have had accounts related to advertising and marketing directed specifically into Florida markets;

(cc)    Because Defendants own the interactive website at www.goodyear.com,

6

hold the copyright associated with the website, and control the content on the website;

(dd)  Because the website at www.goodyear.com offers guidance to customers including customers in Florida through the following features:

    i.  selection of Defendants' tires offered for sale, including Defendants' tires which are offered for sale in Florida;

    ii.  registration of tires with Defendants;

    iii.  promotions to obtain discounts or rewards for the purchase of Defendants' tires; and

    iv.  location of tire dealers, including tire dealers in Florida which customers on the website can be directed to for purchasing Defendants' tires in Florida;

(ee)  Because the website at www.goodyear.com has a "Let's Chat" feature offering live customer service including for customers in Florida;

(ff)  Because Defendants own, hold the copyright to, and control the content of the website at www.goodyear.com, offers guidance to customers (including customers in Florida) through the following features:

    i.  a "shop for tires" features;

    ii.  a "find a store" feature which directs customers to sellers of Defendants' products or services, including tire or tire-service providers in Florida;

    iii.  a feature promoting the benefits of joining the Defendants' programs referenced in the website;

    iv.  a feature enabling customers to send emails and receive answers to questions;

    v.  a feature enabling customers to "chat online" with a "team member"; and

    vi.  a feature permitting customers to create their own special accounts.

(gg)  Because Defendants designed the tire at issue, which failed in a catastrophic manner in Florida;

(hh)  Because Defendants have contacts with Florida such that Defendants have purposefully availed themselves of the benefits and privileges of doing business in Florida;

(ii)  Because Defendants do business in Florida and have purposefully availed themselves of the rights associated with doing business in Florida;

(jj)  Because, during the period from November of 2001 through July of 2018, Defendants have been as a party in numerous civil actions in state and federal courts in Florida where the suits have asserted that the failure of Defendants' tires caused injury, death, or other damage;

(kk)  Because, during the period from November of 2001 through July of 2018, Defendants have on numerous occasions honored contractual and common law duties to defend and indemnify retail sellers of Defendants' tires in Florida courts when the retail seller was sued in Florida courts;

(ll)  Because, during the period from November of 2001 through July of 2018, Defendants have been involved in sufficient litigation in Florida involving Defendants' tires which have been associated with crashes such that Defendants can anticipate being hailed into court in Florida based on crashes which occurred in Florida;

(mm)  Because, during the period from January of 2000 through July of 2018, Defendants have directly or indirectly sold millions of tires in Florida and generated millions of dollars in sales in Florida;

(nn)  Because, during the period from November of 2001 through July of 2018, Defendants made efforts to serve, directly and indirectly, the market for tires in Florida and the 49 other states;

(oo)  Because, during the period from November of 2001 through July of 2018, Defendants engaged in the voluntary interstate sale for profit of the G670 RV tire, size 295/80 R 22.5, load range H tire line;

(pp)  Because Defendants engage in national marketing of their products that intentionally pervade into the Florida market;

(qq)  Because Defendants target marketing specific to Florida;

(rr)  Because Defendants oversee aspects of their product warranty process from within Florida;

(ss)  Because Defendants send recall notices related to safety defects in Florida;

(tt)  Because Defendants direct Florida customers to approved GOODYEAR service centers to have recall work performed in products initially sold into various states but located in Florida at the time of the necessary recall repair and replacement work;

(uu)    Because Defendants direct their customers to dealers in Florida for critical safety related tasks of performing recall work and tire service bulletin services;

(vv)    Because Defendants direct customers to dealers in Florida and have delegated the legally mandated safety related responsibility gathering Early Warning Data to dealers in Florida;

(ww)    Because Defendants have contacts with Florida such that Defendants reasonably anticipate being hailed into Court in Florida;

(xx)    Because this Court's exercise of jurisdiction over Defendants does not violate Defendants constitutional rights under the Due Process Clause;

(yy)    Because this Court's exercise of jurisdiction over Defendants does not violate the traditional notions of fair play and substantial justice;

(zz)    Because Defendants are registered to do business in Florida and have registered agents for service of legal process in Florida; and

(aaa)    Because the Florida standard for exercising specific personal jurisdiction in a non-product-liability tort case where the nonresident Defendant's disputed conduct extended into Florida is set forth in the Florida Statutes, at Fla. Stat. §48.193.

## GENERAL ALLEGATIONS

14.    On July 20, 2016, Kurt Oestriecher purchased a used 2013 Monaco Diplomat recreational vehicle (hereinafter referred to as "the vehicle" or "the subject vehicle"). At the time of purchase, the subject vehicle was equipped with its original equipment Goodyear tires.

15.    Monaco Coach Corporation, who is not a party to this action, designed and manufactured the subject vehicle. At the time of manufacture, the subject vehicle was equipped with Goodyear G670 RV tires, size 295/80 R 22.5, load range H, which Goodyear provided specifications for the design of the Diplomat.

## The Accident

16.    In July, 2018, Kurt and Sandy Oestriecher were visiting their adult daughter in Jacksonville, Florida, and were and had been residing in the subject vehicle at the Pecan Park RV

Resort in Jacksonville, Florida. While in Florida, Kurt Oestriecher performed a visual inspection of the subject vehicle, including an inspection of all tires on the vehicle, every time it was driven in the Jacksonville, Florida area.

17.     On July 14, 2018, Kurt Oestriecher performed a visual inspection of the subject vehicle at the Pecan Park RV Resort in Jacksonville, Florida, including an inspection of all tires on the subject vehicle.  After leaving Pecan Park RV Resort on the morning of July 14, 2018, Kurt Oestriecher operated the subject vehicle with due care along I-10 westbound through Baker County, Florida at Glen Saint Mary with his vehicle on cruise control. Sandy Oestriecher was in the front passenger seat. Both were properly utilizing their available and operational seatbelts.

18.     At that time and place, the front right tire of the subject vehicle without warning suffered a catastrophic tread separation. Kurt Oestriecher felt the tire failure and tapped his brakes to release the cruise control.

19.     As a direct and proximate cause of the catastrophic failure of the tire, the subject vehicle became impossible to steer, Kurt Oestriecher lost control of the subject vehicle, and the vehicle veered off the roadway to the right shoulder, into trees along the north side of the road just east of mile marker 327 on I-10 in Baker County, Florida. Defendants' tire was used and failed in the State of Florida.

20.     After the vehicle came to rest, Kurt Oestriecher saw that Sandy Oestriecher was significantly behind him trapped beneath debris. Because of catastrophic damage to the vehicle, he could not get to her but talked to her until help arrived.

21.      Sandy Oestriecher suffered significant injuries as a result of the crash, including five amputated toes, two broken ribs, punctured lungs, closed reduction surgery on her right arm, open reduction surgery on her right leg, and additional surgery on her left leg. Sandy Oestriecher's injuries occurred in the State of Florida.

22.     Sandy Oestriecher was airlifted from the accident scene to the University of Florida Shands Hospital in Jacksonville, Florida, where she was hospitalized for two weeks for the above-described and additional urgent medical care. After she was discharged from Shands Hospital, Sandy Oestriecher spent an additional week at Brooks Rehabilitation Hospital in Jacksonville, Florida to receive further treatment for her injuries. She underwent significant orthopedic care and physical therapy in an attempt to recover as fully as possible. Sandy Oestriecher's injuries were initially, extensively and principally treated in the State of Florida.

23.     Sandy Oestriecher's leg and foot area is now permanently and visibly disfigured, her mobility is permanently and significantly limited, and she has suffered significant and permanent scarring.

24.     Kurt Oestriecher has suffered the loss of consortium of his wife, Sandy Oestriecher.

**The Defective Goodyear Tire and Goodyear's Knowledge Thereof**

25.     The tire at issue in this litigation, hereinafter referred to as the "subject tire," was positioned on the front right position of the subject vehicle on July 14, 2018 and was an original equipment fitment Goodyear G670 RV, size 295/80 R 22.5, load range H. The DOT code on the subject tire was DANU2CAW3312. It was manufactured by Dunlop Tire Corporation in Buffalo, New York during the 33rd week of 2012.

26.     At all times material hereto, the Defendants, Goodyear, adopted a design process and a manufacturing process for the subject tire which was not common, usual, customary, prudent or in accordance with established industry standards relating to the design and manufacture of similar tires with similar intended and/or foreseeable functions.

27.     At all times material hereto, the subject tire was designed and manufactured without adequate consideration for tire failure, tread and belt separation and resulting loss of vehicle

control while being used under intended and/or reasonably foreseeable conditions, or in an intended and/or reasonably foreseeable manner.

28.     At all times material hereto, the Defendants, Goodyear, failed to perform testing adequate to determine the circumstances under which the subject tire was likely to fail or suffer tread and belt separation and cause resulting loss of vehicle control while being used under intended and/or reasonably foreseeable conditions, or in an intended and/or reasonably foreseeable manner.

29.     The Defendants, Goodyear, designed, manufactured, and placed the subject tire into the stream of commerce, intending that it be used in the manner that it was being used at the time the above-mentioned failure, tread and belt separation, and injuries occurred.

30.     At all times material hereto, the subject tire was maintained and inspected as often as a reasonably prudent person would have done under the same or similar circumstances, and at no time material hereto was the subject tire subjected to any unintended and/or unforeseeable conditions.

31.     The subject tire was in substantially the same defective condition at the time of the above-mentioned failure and/or tread and belt separation as it was when it left Goodyear's possession or control.

32.     The G670 tire line is the successor to a prior Goodyear tire line—the G159—which proved to be defective and dangerous in the field.  G159 tires have caused many crashes from the late 1990s and continuing through today.  As a result, multiple RV manufacturers issued recalls for motorhomes equipped with G159 tires in the early 2000s, and replaced those tires with RV tires produced by a Goodyear competitor.

33.     The G159 tires were and are dangerously susceptible to catastrophic failure because they were not originally designed to be used on RVs. Instead, the G159 line was actually designed

to be used on small trucks—like those used by UPS or Federal Express—to deliver packages within cities.  Additionally, the G159 was only speed-rated for continuous use at 65 miles per hour.

34.     Nonetheless, in an effort to expand market share and increase profits, Goodyear purposefully marketed the G159 to be used on RVs and represented that the tire was safe for continuous use at 75 miles per hour—a full 10 miles per hour higher than the actual safe usage.

35.     The G159 tires' unsuitable design characteristics for RV usage—including overly thick treads with wide belts—caused extreme heat within the tires and resulted in severe internal damage and degradation, as well as accelerated aging.  Goodyear was well-aware of these problems, as they frequently manifested as the root cause of the many crashes caused by catastrophic G159 tire failures in the field.

36.     Goodyear subsequently introduced the G670 tire line in the early 2000s, marketing the line as having been completely re-designed to perform better on RVs.

37.     In reality, however, the G670 tire line shared many of the same design flaws as those present in the G159 model tires. This is particularly true with respect to size 295/80 G670 tires, including the subject tire, which were produced at Goodyear's former production facility in Buffalo, New York.

38.     Notably, the size 295 tires were built in a manner that was more similar to the predecessor G159 tires than they were to smaller sizes of the G670 tires produced at other Goodyear facilities. Among other similarities with the G159, the size 295 G670 tires had a thicker tread depth, wider top belt, and a thinner inner liner when compared with G670 tires produced elsewhere.

39.     Due to its many similarities to the G159 tire, the size 295 G670 tire has also proven to be dangerous and unsafe in the field.  Specifically, just like G159 tires, size 295 G670 tires have proven to be subject to dangerously high operating temperatures and accelerated aging, causing

internal damage and degradation, in addition to many catastrophic tire failures and crashes, including the subject incident.

40.     Goodyear has long known that size 295 G670 tires are dangerous and unsafe for use on RVs.   This knowledge has come from many sources, including internal testing, investigations into field failures and crashes, and from correspondence and communications with plaintiffs injured or killed due to 295 G670 tire failures.

41.     Directly or through their agents, Defendants market and sell the size 295 G670 tire in the State of Florida.

42.     Consumers such as Plaintiffs use Defendants' size 295 G670 tire on roads and highways in the State of Florida.

### The Negligent Manufacturing Plant

43.     The failed tire was negligently manufactured at Goodyear's Tonawanda, New York tire plant, was negligently designed, was negligently inspected, and was deceptively and unconscionably sold by Goodyear in breach of quality assurances.

44.     Considering the number of tires Goodyear was producing in 2012 at Goodyear's Tonawanda plant, and considering the number of tire inspectors and classifiers assigned with the task of inspecting those tires, Goodyear negligently understaffed its quality control and tire inspecting personnel.

45.     The failed tire reflects Goodyear's neglect of its quality assurance policy at the Tonawanda plant, and this neglect is part of a pattern of unconscionable and dangerous conduct at the Tonawanda plant.

46.     At the time it designed and manufactured the failed tire and its components, Goodyear had a duty to Plaintiffs and others similarly situated to carefully staff the tire design, manufacturing, and quality control positions and had a further duty to Plaintiffs and others

14

similarly situated to carefully train its employees involved in the tire design and manufacturing processes, including the quality control processes at the Tonawanda plant where the tire was manufactured. Goodyear breached these duties.

## CAUSES OF ACTION

### COUNT I
### STRICT LIABILITY AGAINST GOODYEAR – MANUFACTURING DEFECT(S)

47.   The Plaintiffs re-adopt and re-allege paragraphs 1 through 46 above.

48.   **Product:** The Goodyear G670 RV tire, size 295/80 R 22.5, load range H originally equipped on Plaintiffs' subject vehicle was designed, manufactured, distributed and placed into the stream of commerce by Goodyear.

49.   **Defect:** At the time the subject tire was manufactured and placed into the stream of commerce by Goodyear, it contained manufacturing defect(s), including but not limited to an overly thin inner liner coupled with a thick tread depth and a wide top belt, which were unreasonably dangerous to persons such as the Plaintiffs, Kurt Oestriecher and Sandy Oestriecher, who were intended and/or foreseeable users.

50.   As a result of the manufacturing defect(s), the subject tire failed to perform as safely as an ordinary consumer would expect when utilizing the subject tire in an intended and/or reasonably foreseeable manner.

51.   **Causation:** The manufacturing defect(s) in the subject tire were the direct and proximate cause of the catastrophic tire failure, and/or tread and belt separation, which caused the subject vehicle to leave the road and which resulted in the subject accident.

52.   The manufacturing defect(s) in the subject tire were the direct and proximate cause of Kurt Oestriecher and Sandy Oestriecher's injuries and damages.

53.      **Damages:** Plaintiff, Sandy Oestriecher, has suffered personal injuries, property damage and other losses and seeks all damages recoverable under law, including for (a) bodily injury and any resulting pain and suffering, disability or physical impairment, disfigurement, mental anguish, inconveniences or loss of capacity for the enjoyment of life, experienced in the past or to be experienced in the future; (b) the expense of hospitalization, medical and nursing care and treatment necessarily or reasonably obtained in the past or to be so obtained in the future; (c) any earnings or working time lost in the past and any loss of ability to earn money in the future; and (d) any damage to her vehicle or other personal property.

54.      Plaintiff, Kurt Oestriecher, at all times material was legally married to Plaintiff Sandy Oestriecher.

55.      As a direct and proximate result of the strict liability of Defendants, Kurt Oestriecher has been in the past and will be in the future deprived of the comfort, care, consortium, companionship, society, attention and services of his lawful wife, Sandy Oestriecher, and has suffered property damage and other losses and seeks all such damages recoverable under law.

WHEREFORE, the Plaintiffs, Sandy Oestriecher and Kurt Oestriecher, her husband, demand judgment for damages against the Defendants, Goodyear, and further demand trial by jury.

<u>**COUNT II**</u>
<u>**STRICT LIABILITY AGAINST GOODYEAR – DESIGN DEFECT(S)**</u>

56.      The Plaintiffs re-adopt and re-allege paragraphs 1 through 46 above.

57.      **Product:** The Goodyear G670 RV tire, size 295/80 R 22.5, load range H originally equipped on Plaintiffs' subject vehicle was designed, manufactured, distributed and placed into the stream of commerce by Goodyear.

58.      **Defect:** At the time the subject tire was designed and manufactured and placed into the stream of commerce by Goodyear, it contained design defect(s), including but not limited to

16

the design of an overly thin inner liner coupled with a thick tread depth and a wide top belt, which were unreasonably dangerous to persons, such as the Plaintiffs, Kurt Oestriecher and Sandy Oestriecher, who were intended and/or foreseeable users.

59.     As a result of the design defect(s), the subject tire failed to perform as safely as an ordinary consumer would expect when utilizing the subject tire in an intended and/or reasonably foreseeable manner, and/or the risk of danger inherent in the design of the subject tire outweighed the benefits of that design.

60.     **Causation:** The design defect(s) in the subject tire were the direct and proximate cause of the catastrophic tire failure, and/or tread and belt separation, which caused the subject vehicle to leave the road and which resulted in the subject accident.

61.     The design defect(s) in the subject tire were the direct and proximate cause of Kurt Oestriecher and Sandy Oestriecher's injuries and damages.

62.     **Damages:** Plaintiff, Sandy Oestriecher, has suffered personal injuries, property damage and other losses and seeks all damages recoverable under law, including for (a) bodily injury and any resulting pain and suffering, disability or physical impairment, disfigurement, mental anguish, inconveniences or loss of capacity for the enjoyment of life, experienced in the past or to be experienced in the future; (b) the expense of hospitalization, medical and nursing care and treatment necessarily or reasonably obtained in the past or to be so obtained in the future; (c) any earnings or working time lost in the past and any loss of ability to earn money in the future; and (d) any damage to her vehicle or other personal property.

63.     Plaintiff, Kurt Oestriecher, at all times material was legally married to Plaintiff Sandy Oestriecher.

64.     As a direct and proximate result of the strict liability of Defendants, Kurt Oestriecher has been in the past and will be in the future deprived of the comfort, care, consortium,

companionship, society, attention and services of his lawful wife, Sandy Oestriecher, and has suffered property damage and other losses and seeks all such damages recoverable under law.

WHEREFORE, the Plaintiffs, Sandy Oestriecher and Kurt Oestriecher, her husband, demand judgment for damages against the Defendants, Goodyear, and further demand trial by jury.

### COUNT III
### STRICT LIABILITY AGAINST GOODYEAR –
### DEFECTIVE WARNING(S) / INSTRUCTIONS(S)

65.     The Plaintiffs re-adopt and re-allege paragraphs 1 through 46 above.

66.     **Product:** The Goodyear G670 RV tire, size 295/80 R 22.5, load range H originally equipped on Plaintiffs' subject vehicle was designed, manufactured, distributed and placed into the stream of commerce by Goodyear.

67.     **Defect:** At the time the subject tire was designed and manufactured and placed into the stream of commerce by Goodyear, it lacked and/or contained defective warning(s) and instructions which rendered the subject tire unreasonably dangerous to persons, such as the Plaintiffs, Kurt Oestriecher and Sandy Oestriecher, who were intended and/or foreseeable users.

68.     At all times material hereto, the subject tire was maintained and inspected and the warning(s) and instructions investigated and comprehended as often and as completely as a reasonably prudent person would have done under the same or similar circumstances, and at no time material hereto was the subject tire subjected to any unintended and/or unreasonable conditions.

69.     At all times material hereto, the use of the subject tire in a manner that was intended and/or reasonably foreseeable by Goodyear, involved substantial dangers that would not be readily recognized by an ordinary user of the subject tire.

70.     At all times material hereto, this danger(s) was known or knowable by Goodyear in light of the generally recognized and prevailing best scientific knowledge available at the time of the design, manufacture, and distribution of the subject tire.

71.     As a result of the lack of and/or defective warning(s) and instructions, the subject tire failed to perform as safely as an ordinary consumer would expect when utilizing the subject tire in an intended and/or reasonably foreseeable manner and/or the risk of danger inherent in the lack of and/or defective warning on or with the subject tire outweighed the benefits of the warning, design and the use of the subject tire.

72.     **Causation:** The lack of and/or defective warning(s) and instructions on or with the subject tire were the direct and proximate cause of the catastrophic tire failure, and/or tread and belt separation, which caused the subject vehicle to leave the road and which resulted in the subject accident.

73.     The lack of and/or defective warning(s) and instructions on or with the subject vehicle were the direct and proximate cause of Kurt Oestriecher and Sandy Oestriecher's injuries and damages.

74.     **Damages:** Plaintiff, Sandy Oestriecher, has suffered personal injuries, property damage and other losses and seeks all damages recoverable under law, including for (a) bodily injury and any resulting pain and suffering, disability or physical impairment, disfigurement, mental anguish, inconveniences or loss of capacity for the enjoyment of life, experienced in the past or to be experienced in the future; (b) the expense of hospitalization, medical and nursing care and treatment necessarily or reasonably obtained in the past or to be so obtained in the future; (c) any earnings or working time lost in the past and any loss of ability to earn money in the future; and (d) any damage to her vehicle or other personal property.

75.    Plaintiff, Kurt Oestriecher, at all times material was legally married to plaintiff Sandy Oestriecher.

76.    As a direct and proximate result of the strict liability of Defendants, Kurt Oestriecher has been in the past and will be in the future deprived of the comfort, care, consortium, companionship, society, attention and services of his lawful wife, Sandy Oestriecher, and has suffered property damage and other losses and seeks all such damages recoverable under law.

WHEREFORE, the Plaintiffs, Sandy Oestriecher and Kurt Oestriecher, her husband, demand judgment for damages against the Defendants, Goodyear, and further demand trial by jury.

## COUNT IV
## NEGLIGENCE AGAINST GOODYEAR – MANUFACTURE

77.    The Plaintiffs re-adopt and re-allege paragraphs 1 through 46 above.

78.    **Duty:**  Goodyear, owed a duty to the Plaintiffs, Kurt Oestriecher and Sandy Oestriecher, and other persons similarly situated to use reasonable care in designing, testing, assembling, manufacturing, and inspecting the subject tire, so that the subject tire could be safely used in a manner and for a purpose for which it was made.

79.    **Breach:**  Goodyear, breached such duties by designing, testing, manufacturing, assembling, and inspecting the subject tire in such a negligent manner that it was likely to fail even while being used in an intended and/or reasonably foreseeable manner.

80.    **Causation:** The negligent manner in which the subject tire was manufactured was the direct and proximate cause of the catastrophic tire failure and/or tread and belt separation, which caused the subject vehicle to leave the road and which resulted in the subject accident.

81.    The negligent manufacture of the subject tire was the direct and proximate cause of Kurt Oestriecher and Sandy Oestriecher's injuries and damages.

82.     **Damages:** Plaintiff, Sandy Oestriecher, has suffered personal injuries, property damage and other losses and seeks all damages recoverable under law, including for (a) bodily injury and any resulting pain and suffering, disability or physical impairment, disfigurement, mental anguish, inconveniences or loss of capacity for the enjoyment of life, experienced in the past or to be experienced in the future; (b) the expense of hospitalization, medical and nursing care and treatment necessarily or reasonably obtained in the past or to be so obtained in the future; (c) any earnings or working time lost in the past and any loss of ability to earn money in the future; and (d) any damage to her vehicle or other personal property.

83.     Plaintiff, Kurt Oestriecher, at all times material was legally married to Plaintiff Sandy Oestriecher.

84.     As a direct and proximate result of the negligence of Defendants, Kurt Oestriecher has been in the past and will be in the future deprived of the comfort, care, consortium, companionship, society, attention and services of his lawful wife, Sandy Oestriecher, and has suffered property damage and other losses and seeks all such damages recoverable under law.

WHEREFORE, the Plaintiffs, Sandy Oestriecher and Kurt Oestriecher, her husband, demand judgment for damages against the Defendants, Goodyear, and further demand trial by jury.

<u>**COUNT V**</u>
<u>**NEGLIGENCE AGAINST GOODYEAR – DESIGN**</u>

85.     The Plaintiffs re-adopt and re-allege paragraphs 1 through 46 above.

86.     **Duty:** Goodyear owed a duty to the Plaintiffs, Kurt Oestriecher and Sandy Oestriecher, and other persons similarly situated to use reasonable care in designing, testing, assembling, manufacturing, and inspecting the subject tire, so that the subject tire could be safely used in a manner and for a purpose for which it was made.

87. **Breach:** Goodyear breached such duties by designing, testing, manufacturing, assembling, and inspecting the subject tire in such a negligent manner that it was likely to fail even while being used in an intended and/or reasonably foreseeable manner.

88. **Causation:** The negligent manner in which the subject tire was designed was the direct and proximate cause of the catastrophic tire failure and/or tread and belt separation, which caused the subject vehicle to leave the road and which resulted in the subject accident.

89. The negligent design of the subject tire was the direct and proximate cause of Kurt Oestriecher and Sandy Oestriecher's injuries and damages.

90. **Damages:** Plaintiff, Sandy Oestriecher, has suffered personal injuries, property damage and other losses and seeks all damages recoverable under law, including for (a) bodily injury and any resulting pain and suffering, disability or physical impairment, disfigurement, mental anguish, inconveniences or loss of capacity for the enjoyment of life, experienced in the past or to be experienced in the future; (b) the expense of hospitalization, medical and nursing care and treatment necessarily or reasonably obtained in the past or to be so obtained in the future; (c) any earnings or working time lost in the past and any loss of ability to earn money in the future; and (d) any damage to her vehicle or other personal property.

91. Plaintiff, Kurt Oestriecher, at all times material was legally married to Plaintiff Sandy Oestriecher.

92. As a direct and proximate result of the negligence of Defendants, Kurt Oestriecher has been in the past and will be in the future deprived of the comfort, care, consortium, companionship, society, attention and services of his lawful wife, Sandy Oestriecher, and has suffered property damage and other losses and seeks all such damages recoverable under law.

WHEREFORE, the Plaintiffs, Sandy Oestriecher and Kurt Oestriecher, her husband, demand judgment for damages against the Defendants, Goodyear, and further demand trial by jury.

<u>**COUNT VI**</u>
**<u>NEGLIGENCE AGAINST GOODYEAR – WARNING(S)/INSTRUCTION(S)</u>**

93.     The Plaintiffs re-adopt and re-allege paragraphs 1 through 46 above.

94.     **Duty:** At all times material hereto, the use of the subject tire in a manner that was intended and/or reasonably foreseeable by Goodyear, involved substantial danger that would not be readily recognized by an ordinary user of the subject tire.

95.     At all times material hereto, this danger was known or knowable by Goodyear in light of the generally recognized and prevailing best scientific knowledge available at the time of the design, manufacture, and distribution of the subject tire.

96.     At all times material hereto, Goodyear had a duty to plaintiffs and others similarly situated to provide an adequate warning(s) and instruction(s) to the Plaintiffs on how to use, maintain and recognize and appreciate the danger inherent within the subject tire.

97.     **Breach:** At all times material hereto, Goodyear breached that duty by failing to give adequate warning(s) and instruction(s) of the danger associated with the subject tire.

98.     **Causation:** The lack of and/or negligent warning(s) and instruction(s) on or with the subject tire was the direct and proximate cause of the catastrophic tire failure, and/or tread and belt separation, which caused the subject vehicle to leave the road and which resulted in the subject accident.

99.     The lack of and/or negligent warning(s) and instruction(s) on or with the subject tire was the direct and proximate cause of Kurt Oestriecher and Sandy Oestriecher's injuries and damages.

100.    **Damages:** Plaintiff, Sandy Oestriecher, has suffered personal injuries, property damage and other losses and seeks all damages recoverable under law, including for (a) bodily injury and any resulting pain and suffering, disability or physical impairment, disfigurement,

mental anguish, inconveniences or loss of capacity for the enjoyment of life, experienced in the past or to be experienced in the future; (b) the expense of hospitalization, medical and nursing care and treatment necessarily or reasonably obtained in the past or to be so obtained in the future; (c) any earnings or working time lost in the past and any loss of ability to earn money in the future; and (d) any damage to her vehicle or other personal property.

101.    Plaintiff, Kurt Oestriecher, at all times material was legally married to Plaintiff Sandy Oestriecher.

102.    As a direct and proximate result of the negligence of Defendants, Kurt Oestriecher has been in the past and will be in the future deprived of the comfort, care, consortium, companionship, society, attention and services of his lawful wife, Sandy Oestriecher, and has suffered property damage and other losses and seeks all such damages recoverable under law.

WHEREFORE, the Plaintiffs, Sandy Oestriecher and Kurt Oestriecher, her husband, demand judgment for damages against the Defendants, Goodyear, and further demand trial by jury.

## COUNT VII
## BREACH OF WARRANTIES BY GOODYEAR

103.    The Plaintiffs re-adopt and re-allege paragraphs 1 through 46 above.

104.    Goodyear impliedly and/or expressly warranted that the subject tire, and each and every component thereof, was fit for the purpose for which it was to be used, was merchantable, and was free from design and manufacturing defects to consumers and users thereof.

105.    Goodyear breached those warranties when the subject tire, and each and every component part thereof, was not merchantable, free from such defects nor fit for the purpose for which it was to be used, because it was defective.

106.    Plaintiff, Sandy Oestriecher, has suffered personal injuries, property damage and other losses and seeks all damages recoverable under law, including for (a) bodily injury and any

resulting pain and suffering, disability or physical impairment, disfigurement, mental anguish, inconveniences or loss of capacity for the enjoyment of life, experienced in the past or to be experienced in the future; (b) the expense of hospitalization, medical and nursing care and treatment necessarily or reasonably obtained in the past or to be so obtained in the future; (c) any earnings or working time lost in the past and any loss of ability to earn money in the future; and (d) any damage to her vehicle or other personal property.

107.    Plaintiff, Kurt Oestriecher, at all times material was legally married to plaintiff Sandy Oestriecher.

108.    As a direct and proximate result of the breach of warranty of Defendants, Kurt Oestriecher has been in the past and will be in the future deprived of the comfort, care, consortium, companionship, society, attention and services of his lawful wife, Sandy Oestriecher, and has suffered property damage and other losses and seeks all such damages recoverable under law.

WHEREFORE, the Plaintiffs, Sandy Oestriecher and Kurt Oestriecher, her husband, demand judgment for damages against the Defendants, Goodyear, and further demand trial by jury.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues so triable as a matter of right.

Dated: April 21, 2020

Respectfully submitted,

**COLSON HICKS EIDSON, P.A.**
255 Alhambra Circle – Penthouse
Coral Gables, Florida 33134
Telephone: (305) 476-7400
Facsimile:  (305) 476-7444

By: **/s/ Julie Braman Kane**
     Julie Braman Kane – Trial Counsel
     Florida Bar No. 980277
     Primary E-mail: julie@colson.com

Secondary E-mail: b.cancela@colson.com
                  eservice@colson.com
Zachary A. Lipshultz
Florida Bar No. 123594
Primary E-mail: zach@colson.com
Secondary E-mail:  eservice@colson.com
*Counsel for Plaintiffs*